## Giadosh v. Tiger et al.

Before Aponick, J., Valentine, J., did not participate.

*William A. Valentine*, for plaintiff.

*Frank Slattery, Jr.,* and *Johnston & Pope*, for defendants.

APONICK, J., August 14, 1950.—This is on defendants' demurrers to plaintiff's complaint in trespass.

Defendant, May Post Tiger, is the owner of 18 acres of land in Wyoming Borough, this county, which she leased to plaintiff for farming purposes for the year of 1948. The lease contained the following provisions:

"And said party of the second part hereby accepts notice to quit the leased premises on the 31st day of December, 1948, without further notice from said lessor . . ."

"It is also agreed, that in case of holding over by the lessee, after expiration of the term, all covenants herein contained shall continue in force and the confession of judgment hereinbefore made shall stand for liability thereby incurred."

The yearly rental was $155, of which $50 was paid at the time the lease was signed, and the balance of $105 on July 1, 1948. Plaintiff entered on the land and raised truck during the 1948 season. On or about September 15th of that year, he sowed the 18 acres with rye as a green manure crop. On or about January 6, 1949, plaintiff tendered defendant owner $50 as down payment on a renewal of the lease for the year 1949. She refused it. On February 28, 1949, plaintiff's attorney sent her a $50 check for the same purpose. On March 2, 1949, her attorney, Frank P. Slattery, Sr., returned the check. Notwithstanding the refusal, plaintiff's counsel, on March 7, 1949, sent the same check back to Mr. Slattery, reminding him that plaintiff was still in possession. This check was never returned

either to plaintiff or to his attorney. There is no allegation that it was ever cashed. In March of 1949 defendant owner leased the land to the other defendant, Steven Gaydosh, who took possession and plowed under the 18 acres of rye. Plaintiff thereupon brought this suit to recover the unreturned $50 check, the cost of the rye seed, as well as for the value of the rye plowed under, or a total of $1,073.75. Each defendant filed a separate demurrer to the complaint.

Both demurrers must be sustained. The lease was never renewed. Having accepted notice to quit December 31, 1948, plaintiff's term was then at an end: Kovalick v. Staviscak et al., 40 Luz. 256; McCanna v. Johnston, 19 Pa. 434. Defendant owner then had a perfect right to lease this land to the other defendant. By exercising that right she did not become responsible or accountable to plaintiff for any act which the other defendant may have committed on the land. If Steven Gaydosh converted the rye plaintiff must look to him alone for damages.

Nor can we charge defendant owner with her attorney's failure to return plaintiff's attorney's $50 check. First of all, there was no duty upon Mr. Slattery to return an unsolicited check. Secondly, his authority was limited to returning the check sent to his client; he had no authority to renew the lease. Mr. Slattery is now dead. Assuming the check is still among his effects, there is no legal theory which makes his client liable for it. By no stretch of the imagination can we charge the other defendant for the acts of his landlord's attorney.

In order to prevail plaintiff must establish that he had a right to the rye crop, i.e., he must rely on a theory of "waygoing crop". This theory applies "where a tenant of agricultural land sows in the fall of the year, a crop of grain which requires for its ripening a period greater than the unexpired term of his lease . . ."

Marple v. Brister, 63 Pa. Superior Ct. 470, 473. However, the term must expire in the spring: Brobst v. Troy, 17 Schuyl. 2. The rule is peculiar to Pennsylvania. It arose through custom among farmers and in time became a part of our common law. The rule is based on reason; a farmer should be permitted to have a winter crop of grain in addition to his regular grain crop for a year's rent: Brobst v. Troy, supra. Reason still controls; the rule will not be applied contrary to reason. Thus where the tenant by stipulation gets the growing winter grain sown by his predecessor, he cannot have the "waygoing crop" when he leaves, for then he would be getting two crops of winter grain for one year's rent: Brobst v. Troy, supra.

In the instant case plaintiff had his 18 acres of truck in 1948. If he were permitted to have the rye as a "waygoing crop," he would be allowed to go on the land in August, some seven months after the expiration of his lease, to harvest it. Since the entire 18 acres were sown with the rye, defendant Gaydosh ". . . the incoming tenant would be without productive land during his first year. This would not be good husbandry, and is not warranted by any custom of farmers in this State. If such an unreasonable situation was contemplated it should have been provided for by a special stipulation in the lease": Marple v. Brister, supra.

We are not going to extend the rule beyond its present reasonable limits. Plaintiff's lease expired not in the spring as farm leases usually do, viz., in April; but in early winter, viz., at the end of December. Furthermore, the usual farm consists of various fields in which various crops are planted. Here there was but one field sown entirely with but a single crop. As we pointed out, the theory of "waygoing crop" is peculiar to our law; it was unknown at common law. Indeed, Blackstone says "for the tenant knew the expiration of his term and therefore it was his own folly" to plant

that which wouldn't ripen until after his term. Plaintiff knew his lease expired at the end of the year; he gambled that he could get it renewed. His loss was his own folly.

Accordingly, now, the several preliminary objections of respective defendants are sustained and judgments are entered in favor of defendants.